UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

VOL LAM,

Petitioner,

v.

TODD BLANCHE, *et al.*,

Respondents.

CASE NO. 2:26-cv-04075-GJL

ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Vol Lam ("Petitioner") is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. 1. On October 23, 2026, Petitioner, through counsel, filed a Petition for writ of habeas corpus under 28 U.S.C. § 2241, seeking release from custody.[1] Dkt. 1. The Petition has been fully briefed. Dkts. 1, 8, 11.

Having considered the parties' submissions, the balance of the record, and the governing law, the Court **GRANTS** the Petition (Dkt. 1) and **ORDERS** Petitioner's **immediate release** as set forth in the conclusion below.

[1] The parties have consented to proceed in this matter before a United States Magistrate Judge. *See* Dkt. 5.

## I. BACKGROUND

Petitioner is a native and citizen of Vietnam who entered the United States as a lawful permanent resident ("LPR") on May 13, 1993. Dkt. 9 ¶ 4 (M. Smith Decl.). Thereafter, between 1993 and 2009, Petitioner was arrested and convicted for several criminal offenses in the State of Washington. Dkt. 9 ¶ 5; Dkt. 10-1, Ex. 1 (Form I-213, Record of Deportable/Inadmissible Alien). After encountering immigration officials while in state custody in October 2009, on December 3, 2009, Petitioner was issued a Notice to Appear ("NTA") charging him with removability under Immigration and Nationality Act ("INA") § 237(a)(2)(B)(i), 8 U.S.C. § 1227 (a)(2)(B)(i), and INA § 237(a)(2)(A)(i), 8 U.S.C. § 1227(a)(2)(A)(i), and placing him in immigration proceedings. Dkt. 9 ¶¶ 6–7.

On March 31, 2010, an Immigration Judge ("IJ") granted Petitioner's application for cancellation of removal, and Petitioner maintained his status as an LPR. *Id.* ¶ 8.

In May 2015, Petitioner was convicted on a 2014 arrest for rape and related charges, and committed to the Washington Department of Corrections. *Id.* ¶¶ 9–10. As a result, on July 8, 2015, Petitioner was issued another NTA charging him with removability under the INA. *Id.* ¶ 11. Petitioner was placed in immigration proceedings and ordered removed to Vietnam on September 23, 2015. *Id.* ¶ 12. Both parties waived appeal, making the Order of removal administratively final on September 23, 2015. *Id.*

On March 15, 2016, ICE's Office of Enforcement and Removal Operations ("ERO") released Petitioner from immigration custody on an Order of Supervision ("OSUP"), imposing reporting requirements and other conditions of release, including that he not associate with criminal activity. *Id.* ¶ 13. However, after his release on the OSUP, Petitioner was arrested and convicted of multiple criminal offenses in the State of Washington from 2015 through 2026. *Id.* ¶

15; Dkt. 10-1, Ex. 1. Petitioner also failed to report for an ICE check-in on October 9, 2017. *Id.* ¶ 14.

On September 22, 2026, ERO re-detained Petitioner during a scheduled check-in and revoked his OSUP. Dkt. 9 ¶¶ 16–17. Petitioner was provided with a Notice of Revocation of Release and an informal interview. *Id.* ¶ 17. The Notice also informed Petitioner that ICE is seeking a travel document to effectuate his removal to Vietnam. Dkt. 10-5, Ex. 5 (Notice of Revocation of Release). Petitioner provided a written statement, stating he had stopped reporting because he cannot be removed to Vietnam and he was "busy." *Id.* at 5, Ex. 1. The Form I-213 indicates that ERO considered Petitioner's failure to report in 2017, his statement that he no longer wanted to report for ICE check-ins, and his criminal history to determine that Petitioner had failed to comply with the terms of his OSUP. Dkt. 9 ¶¶ 16–17; Dkt. 10-1 at 9, Ex. 1.

On October 8, 2026, ERO submitted a Travel Document Request ("TDR") for Petitioner to the Vietnam Embassy. Dkt. 9 ¶ 18. This TDR remains pending. *Id.* ¶ 20. On October 9, 2026, ERO served Petitioner with a Form I-229a, Warning for Failure to Depart. *Id.* ¶ 19. Respondents assert that ERO will follow up with the Vietnam Embassy regularly to ensure they have all necessary information for the issuance of the travel document. *Id.* ¶ 20.

In their Return, Respondents claim that ERO believes there is a significant likelihood of removal in the reasonably foreseeable future. Dkt. 8 at 8; Dkt. 9 ¶ 22. Further, ERO intends to remove Petitioner in the normal course to Vietnam once it obtains a travel document for Petitioner. Dkt. 8 at 8; Dkt. 9 ¶ 21. ERO expects a travel document to issue for Petitioner as Vietnamese officials are regularly issuing travel documents upon request for similarly situated individuals who are Vietnamese citizens and subject to a final order of removal from the United

States. Dkt. 8 at 8; Dkt. 9 ¶ 21. Respondents assert that ICE does not presently intend to remove Petitioner to a third country. Dkt. 8 at 14.

Petitioner counters that Respondents have not provided him or the Court with a copy of the TDR, and have failed to identify or provide evidence of a single instance of following up with the Vietnam Embassy since their submission of the TDR. Dkt. 11 at 4.

Petitioner filed his habeas Petition on October 23, 2026. Dkt. 1. He argues that his continued detention, without a reasonably foreseeable end, is unconstitutional under *Zadvydas v. Davis*, 533 U.S. 678 (2001). He asks the Court to order Respondents to promptly release him and refrain from re-detaining him, as well as other prospective injunctive relief. Dkt. 1-1 at 46–47.

## II. HABEAS STANDARD

Federal courts have authority to grant writs of habeas corpus to individuals in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). To obtain habeas relief, habeas petitioners have the burden of demonstrating there is no lawful basis for their detention by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c).

## III. DISCUSSION

### A. Petitioner's Detention

In this action, Petitioner challenges the constitutionality of his detention pursuant to 8 U.S.C. § 1231, which takes effect once a final order of removal has been entered by an IJ.

Detention of noncitizens following an order of removal is governed by the INA. "When [a noncitizen] has been found to be unlawfully present in the United States and a final order of removal has been entered, the Government ordinarily secures the [noncitizen's] removal during a subsequent 90-day statutory 'removal period,' during which time the [noncitizen] normally is

held in custody.” *Zadvydas*, 533 U.S. at 682. During the 90-day removal period, the Government “shall detain” the noncitizen. 8 U.S.C. § 1231(a)(2)(A). Once the 90-day removal period ends, the Government may continue to detain certain noncitizens. *Id*. § 1231(a)(6). “[A noncitizen] ordered removed who is inadmissible …, removable[,] … or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period[.]” *Id*.

Federal regulations govern the re-detention and revocation of supervised release of a noncitizen with a final order of removal. 8 C.F.R. § 241.13(a). Under 8 C.F.R. § 241.13(i), ICE may revoke a noncitizen’s release if (1) if they violate the conditions of their release or (2) if, “on account of changed circumstances,” ICE determines there is a significant likelihood the noncitizen will be removed in the reasonably foreseeable future.

However, the INA does not authorize “indefinite, perhaps permanent, detention” of noncitizens subject to final orders of removal. *Zadvydas*, 533 U.S. at 699. “A statute permitting indefinite detention of [a noncitizen] would raise a serious constitutional problem [under] … [t]he Fifth Amendment’s Due Process Clause.” *Id*. at 690. Thus, “once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute.” *Id*. at 699. The “presumptively reasonable” period for detention following a removal order is six months. *Id*. at 701.

In challenging detention through a habeas petition, the petitioner bears the initial burden of providing “good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.” *Zadvydas*, 533 U.S. at 701. Once that showing is made, the Government “must respond with evidence sufficient to rebut that showing.” *Id*. If the

Government fails to meet its burden, then the noncitizen must be released from detention. *See Jennings v. Rodriguez*, 583 U.S. 281, 299 (2018).

Here, Petitioner received a final order of removal on September 23, 2015. Dkt. 8 at 6. Although he was released on an OSUP in March 2016, he was re-detained on September 22, 2026, and has remained in detention at NWIPC since that date. Dkt. 1-1 at 2–3; Dkt. 8 at 8. The parties do not contest that Petitioner's detention has extended beyond the presumptively reasonable six-month period. Dkt. 1-1 at 40–41; Dkt. 8 at 9–10.

Petitioner has shown that "there is no significant likelihood of removal in the reasonably foreseeable future," *Zadvydas*, 533 U.S. at 701, as Petitioner cannot be removed to Vietnam at this time because he does not possess travel documents for Vietnam. Nor does he hold a travel document for any other country. The burden thus shifts to Respondents.

The Court concludes that Respondents have not met their burden of rebutting Petitioner's showing under *Zadvydas*. In their Return, Respondents assert ERO sent a TDR to the Vietnam Embassy on October 8, 2026, and that they "expect[ ] a travel document to issue for Petitioner as Vietnamese officials are regularly issuing travel documents upon request for similarly situated individuals who are Vietnamese citizens and subject to a final order of removal from the United States." Dkt. 8 at 11; Dkt. 9 ¶ 18. But this statement alone does not automatically render Petitioner's removal "reasonably foreseeable." *See Zadvydas*, 533 U.S. at 701.

More specifically, Respondents have provided no evidence of subsequent communication with the Vietnamese authorities or any estimated timeline for obtaining a travel document. *See, e.g.*, *Pham v. Scott*, No. 2:26-cv-00027-LK, 2026 WL 238994, at *5 (W.D. Wash. Jan. 29, 2026) ("an assertion of good-faith efforts to secure removal . . . does not make removal likely in the reasonably foreseeable future."); *Tran v. Bondi*, No .C25-01897-JLR, 2025 WL 3140462, at *3

(W.D. Wash. Nov. 10, 2025) ("ICE is not permitted to hold [petitioner] indefinitely while it waits for travel documents from Vietnam."). Nor have Respondents presented any estimated timeline for obtaining a travel document. *See Van Huynh v. Bondi*, No. C25-2093-KKE, 2025 WL 3534210, at *3 (W.D. Wash. Dec. 10, 2025) (The Government has "provided no timeline . . . nor any information about the likelihood that the government of Vietnam will ultimately approve the issuance of travel documents for Petitioner."). Accordingly, the Government has not met its burden since the record leaves the likelihood of removal and timing uncertain.

Petitioner's criminal history does not alter this analysis. If *Zadvydas* is satisfied, release is warranted even if the petitioner has a criminal record. *Baltodano v. Bondi*, 815 F. Supp. 3d 1191, 1199 (W.D. Wash. 2025) (quoting *Zadvydas*, 533 U.S. at 684) ("the Court is bound by the holding in *Zadvydas*, a case that notably involved [an] individual with 'a long criminal record' and 'a history of flight.'"); *see also Ho v. Blanche*, No. 2:26-cv-03590-TLF, 2026 WL 3178892, at *3 (W.D. Wash. Oct. 23, 2026); *Hagos v. Blanche*, No. 2:26-cv-01513-TLF, 2026 WL 1905861, at *3 (W.D. Wash. July 2, 2026).

Indeed, Petitioner's criminal history and alleged non-compliance with his release conditions, *inter alia*, supported his removability. For reasons unclear to this Court, the Government has simply failed to acquire the seemingly attainable travel documents within the generous time afforded by Constitutional Due Process constraints. The Court is left to speculate whether the Government's failure to take such necessary steps to secure Petitioner's removal, who allegedly presents a danger to the community, is the result of strained Governmental resources. If true, such a conclusion is all the more troubling at a time when the Government has committed considerable resources elsewhere, particularly in numerous cases where noncitizens did not present any conceivable threat to community safety. *See Reyes Sira v. Mullin*, No. 2:26-

cv-03899-GJL, 2026 WL 3320005 (W.D. Wash. Nov. 3, 2026) (re-detention of petitioner with pending asylum application and no criminal record); *Singh v. Mullin*, No. 2:26-cv-03490-GJL, 2026 WL 3031309 (W.D. Wash. Oct. 9, 2026) (same); *Sidhe v. Scott*, No. 2:26-cv-03188-TMC, 2026 WL 2935934 (W.D. Wash. Sept. 30, 2026) (re-detention of work-authorized noncitizen with no criminal record who was permitted to live in the community pending the outcome of immigration proceedings); *Loya Medina v. Hernandez*, No. 2:26-cv-00772-GJL, 2026 WL 1260848 (W.D. Wash. May 7, 2026) (re-detention of petitioner with no criminal record and who had resided in United States for nearly 21 years).

The Court is thus persuaded that there is no significant likelihood that Petitioner will be removed in the reasonably foreseeable future. Accordingly, Petitioner has shown, by a preponderance of the evidence, that he is "in custody in violation of the Constitution or laws or treaties of the United States" and is therefore entitled to habeas relief. *See* 28 U.S.C. § 2241(c).[2]

**B. Remedy**

Petitioner asks the Court to grant immediate release, and order that Respondents: (1) may not re-detain Petitioner without first holding a hearing before a neutral decisionmaker at which Respondents bear the burden of establishing flight risk or danger to the community by clear and convincing evidence based on changed circumstances since Petitioner was previously released; (2) may not otherwise re-detain Petitioner unless they: (a) obtain a valid travel document to Vietnam for him, (b) provide the valid travel document to him and his counsel, (c) offer Petitioner the opportunity to leave on his own within two months, and (d) Mr. Lam does not leave, and, under such circumstances, Respondents may be permitted to re-detain Petitioner

[2] Because the Court has determined Petitioner is entitled to habeas relief on the *Zadvydas* claim alleged in the Petition, it need not reach the parties' arguments on the other claims alleged in the Petition.

provided they have already made concrete arrangements for him to be put on a flight to Vietnam in the reasonably foreseeable future; (3) may not remove or seek to remove Petitioner to a third country without notice and meaningful opportunity to respond in compliance with the statute and due process in reopened removal proceedings; (4) may not remove Petitioner to any third country where he is likely to face imprisonment or other punishment upon arrival; and (5) release Petitioner on the same conditions as on his most recent release. Dkt. 1-1 at 46–47.

Federal courts have "a fair amount of flexibility" in fashioning specific habeas relief. *Burnett v. Lampert*, 432 F.3d 996, 999 (9th Cir. 2005). Petitioner has been subject to detention that has exceeded the Due Process limits determined under *Zadvydas*, which is a significant injury. The Court has addressed this requested relief by granting the habeas corpus petition and directing his immediate release.

A plaintiff/petitioner must meet four elements to justify an order granting a permanent injunction: first, they have suffered an irreparable injury; second, remedies at law would be inadequate to compensate plaintiff for the injury; third, considering the balance of hardships between plaintiff and defendant, an equitable remedy is warranted; and fourth, the "public interest would not be disserved by a permanent injunction." *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). On this record, Petitioner has not met the first element, that he would suffer irreparable injury without a permanent injunction. *See Le v. Bondi*, 824 F. Supp. 3d 1112, 1121–22 (W.D. Wash. 2026) (whether the Government complied with petitioner's right to due process as applied must be reviewed based on specific circumstances at the time); *Rahim v. Hernandez*, No. 2-26-cv-03476-LK, 2026 WL 3059247, at *5 (W.D. Wash. Oct. 13, 2026) (citing *Roman v. Wolf*, 977 F.3d 935, 941–42 (9th Cir. 2020) and finding that criteria for permanent injunctive relief were not met). Nothing in this Order prevents Petitioner from

pursuing additional relief if warranted by future events. *See Ho*, 2026 WL 3178892, at *4; *Coke v. Bondi*, No. C26-71-MLP, 2026 WL 221514, at *4 (W.D. Wash. Jan. 28, 2026).

## IV. CONCLUSION

Based on the foregoing, the Court **GRANTS** the Petition for writ of habeas corpus (Dkt. 1) and **ORDERS** as follows:

(1) Respondents **SHALL** immediately release Petitioner Vo Lam from custody on reasonable conditions of supervision; and

(2) Respondents **SHALL** file a declaration with the Court within **twenty-four hours** of this Order, confirming that Petitioner has been released from immigration detention and providing the date and time of his release.

Dated this 24th day of November, 2026.

Grady J. Leupold
United States Magistrate Judge